by Gary Files and Jackson County of Joliet Junior College, Joliet High School, et al. admitted by Mallory Vizzotti. So we wanted to let you know that the third panelist is Justice McDade and she's had an emergency and is unavailable to join us this morning. She will, of course, listen to the tapes and participate fully in the decision process. With that, Mr. Jacoby, if you're ready to proceed, you may do so. Scott, thank you. My name is Benjamin Jacoby and I represent Jackson Generation, LLC. Jackson Generation is constructing a utility-scale natural gas fuel combined cycle power plant in Will County. And this case arises from the off-cycle reassessment of property valuation for property taxes by the Will County Board of Review, Will County Supervisor of Assessments, and the Jackson Township Assessor in November of 2020. That happened without due process, without notice to Jackson Generation, or an opportunity to be heard, and in violation of Jackson Generation's procedural due process rights. That reassessment resulted in an increase in value of the property from about $90,000 to about $54.8 million, an increase of over 60,000% when construction at the time was only 4.2% complete. In addition to the procedural due process claims we've asserted, we also allege substantive due process claims, and we allege because those assessments were arbitrary and capricious and irrational. And finally, in the alternative to the constitutional claims, we allege in the amended complaint a statutory tax challenge under Sections 2310 and 2315 of the Property Tax Code. The Circuit Court granted motions to dismiss in this case, a 2615 motion followed by the County Defendants, which are the County Supervisor of Assessments and the Treasurer, and a combined 2615-2619 motion to dismiss followed by a Jackson Township and the Jackson Township Assessor. Can I just ask about that? I know you're briefing me, you just said now that the county filed 615. It looks to me like it's actually a 619, am I reading the record wrong? You're right. The motion itself was presented as a 2615 against the initial complaint, and then when we filed the amended complaint, they just adopted it to the amended complaint. It's a little procedurally quirky because it didn't really line up with the amended complaint. We re-alleged and alleged additional facts in the amended complaint. Their argument, though, in the initial motion to dismiss was that we failed to state a claim, and then they sort of adopted these additional affirmative matters, you know, the failure to exhaust remedies, for example, in defense of the amended complaint. So, it would have been cleaner, of course, for them to re-lead their motion to dismiss, but that is what was on the record. The Township and the Township Assessor filed a new motion to dismiss, combined 2615-2619 on the amended complaint, so that's a clean motion that had an affidavit attached to it signed by the Assessor, and then all the other defendants we're calling the taxing bodies, they are necessary parties to effectuate constructive trust relief, and so they were dismissed as well because without causes of action, there was no relief to afford against them. We're asking this court, of course, to reverse the circuit court's dismissal of the case and to allow us to proceed on the amended complaint in this case. I'll spend most of my time, unless directed otherwise, on the notice issue. It's critical that you understand that our claims assert constitutionally deficient notice, which in some cases is different than the statutorily required notice. We know that from Pasolino v. City of Zion, a Supreme Court case, also Musicus v. First Equity Group, which comes out of this court. The United States and the Illinois constitutions require notice that is, quote, reasonably calculated under all circumstances to apprise the interested parties of the pendency of the action and afford them the opportunity to present their objections, that's from Musicus. If the notice is not reasonably calculated under the totality of the circumstances, then it is constitutionally deficient, and constitutionally deficient notice of a reassessment, as in this case, renders the reassessment void, so that's the consequence here. And that is supported by a number of cases that we've cited in our briefs. This constitutional standard applies to tax cases that comes from Mercury-System Boards v. Cook County, so it applies here. So the issue before this court is whether the amended complaint pleads facts in inferences to support a claim that the defendants did not provide notice that is reasonably calculated to apprise Jackson Generation of the increased reassessment, which again, happened off-cycle. So what is reasonably calculated in this case is the question, and that standard comes from the Balancing Act and Matthews v. Elders, the United States Supreme Court case, which has three prongs. The first prong is the private interest implicated by the official action. In this case, the reassessment resulted in an increase in property taxes of about three and a half million dollars, so significant private interest implicated. The next two prongs I'll sort of take in tandem. The second one is the risk of the erroneous deprivation of that interest through the proceedings used, which in this case, as pled, were none, there were no proceedings. And the probative value, if any, of additional or substitute safeguards, those safeguards would include a hearing before the Board of Review or PTAB, have you been given notice and an opportunity to assert those hearings. The third prong, then, is the government's interest, and this is really, you know, how much more does it cost, what additional burden is it to the government to provide these additional safeguards? And I'll explain that that was virtually nothing in this case. Let me ask a question. The complaint suggests that in late winter 2021, you learned from a consultant about the change. It's a little vague about when that occurred, and I ask that question as it relates to when was the, did you learn that before or after what would have been the opportunity to challenge the assessment? After. Okay. Yeah. After. And is that clear from the complaint? Yeah, that's pled, because the final opportunity to receive notice at all of the reassessment would have occurred from the final reassessment in January of 2021 from the Board of Review when they made their final reassessment. That notice went out, as explained, to the defunct address in Houston. It came back returned as sender. Those slips are actually attached to the complaint. So it's X days or 30 days from that date. That's the last opportunity. Precisely. That would have been our... You learned from the consultant after that. It would have happened after that. Okay. Yeah. And the consultant learned through reading public notices that were then published that summer. So because that notice was not provided, there was no opportunity to either have a hearing before the Board of Review or a hearing in front of PTAB. Counsel, had you been in contact or someone had, had the company been in contact with You said the defunct address. Yeah. Yeah. So in 2017, 2018, Jackson Generation and its legal counsel engaged in discussions with the county, both the State's Attorney's Office and the Supervisor of Assessments on tax liability on this property. So it was being discussed. They had the company's address, headquarters in Schaumburg, they had the worksite address, they had their emails, and they had their counsel's emails. So all of that information was available. Following that, the reassessment came out or the assessment came out on normal cycle and that was the $90,000 on the unsplit property. After that assessment was published in August of 2020, $90,000 on the unsplit property. What happened next, the splitting of the parcel into the 001 parcel and the 002 parcel. The reassessment of those parcels from $90,000 to $54.8 million. The proposed notice that went out or the proposed reassessment notice that purportedly went out and the final reassessment that went out in January, no contact with Jackson Generation during that time period. Did Jackson Generation play a role in the splitting of the parcels? No. Jackson Generation had no knowledge of or involvement in the splitting of the parcels in August of 2020, which happened after the publication of the first of the on-cycle assessment of $90,000. So that was a major problem here because after the assessment was published at $90,000 and that was published in Farmers Weekly for normal and Jackson Generation saw it, looked it up as they always did and no problems there. Everything that happened afterwards, no notice, no opportunity to be heard. In November of 2020, when the parcels were split and then a reassessment was assigned to the 001 parcel and the 002 parcel, at that moment, and that was in November 9 of 2020, based on the county's consultant's analysis of what these should be reassessed at, Mr. Trowbridge, the county's consultant. At that point, the county, either the supervisor or the assessor, had an obligation under the statute, section 1230A, to send notice to Jackson Generation of the proposed reassessment. That notice, as we've pledged, did not go out to 001 parcel. The county admitted that in a hearing before the circuit court during a preliminary injunction hearing, which was denied based on lack of emergency, based on the court's ruling. But the county's counsel at that hearing admitted 001 notice did not go out. We don't dispute that. So there's no dispute on 001 parcel. The 002 parcel, they have asserted, was mailed to the address in Houston, and we have alleged in our complaint that it was returned to sender and that Jackson Generation never received that notice. And what we've argued in this briefing and what our complaint supports in the allegations is that when the county received that return to notice, under the constitutional standard of notice, to be reasonably calculated to provide Jackson Generation notice of the reassessment, in this case, the county supervisor and the township assessor had an obligation under the constitution to either email it to us, which a click of the button would have ended this case at that time, email it to Jackson Generation or its counsel, which they both had email addresses, or mail it to headquarters, which they had the headquarters address, or mail it to the work site. So this is the Jones case? Jones. Is it the idea that you should, if you get a return to sender, you should turn around and on a due process basis try to reach them otherwise? That's the concept. And that's actually seen in many cases that we cited, I'm not sure we cited the Jones case, but M.S. Kaplan v. Cullerton, Dietman v. Hunter, Marty v. Brown, even Eritzke v. Bastian, all of these cases support the premise that if, in this case I would say, if it was return to sender and you have information available to you and it's easy for you to contact and to provide notice to the taxpayer, then you have an obligation to do so. It might be a different case if they didn't have the information, if they didn't get a return to sender, but that's not the case here, it was very clear. Not only that, but in November of 2020, when Mr. Trowbridge made his recommendation for reassessment and the proposed reassessment was put together, that package was emailed to the, from the supervisor's office to the assessor's office. Also copied on that email were the major taxing district bodies' attorneys, so District 203 and 204's attorneys were copied on that email. It would have been very easy for them to just copy Jackson Generation on that email too so that everybody had the proposed reassessment with the supporting material, which were enterprise zone applications and certificates, which posed their own problem, which I can get into in a moment. At that moment, Jackson Generation would have had notice and again, you wouldn't be here today. It would have been just that easy for the county to do. So that actually satisfies the third prong of the Matthew Eldridge balancing test, the administrative burden to the county. There is none. They could have just emailed it to the Jackson Generation or to its council or again, mailed it to those addresses. It had those addresses not only from the meetings in 2017-2018, but those addresses were also on the enterprise zone certificate applications and certificates that Mr. Trowbridge relied on to form his opinion on the reassessment. So this sort of gets into the second prong, which is what good would a hearing have done for Jackson Generation had they been provided notice of that hearing? They would have had two chances. Had they received notice of the proposed reassessment in November 2020, they could have requested a hearing before the board of review. So that would have been one additional safeguard for Jackson Generation and they would have exercised that and they would have made a number of points that I'll go through in one sec. The second opportunity would have been, had they received notice of the final reassessment then they could have appealed to PTAP. Had they gone to hearing in either one of those spots, had they had notice and an opportunity, they would have demonstrated that reliance on enterprise zone certificates is not a valid basis to assess real property because the enterprise zone certificates and application for those certificates is just simply those building materials that are exempt from sales and use tax under the Enterprise Zone Act, those building materials are not real property. In fact, they include things like gas turbines, which are not real property and that significantly escalated the valuation that Mr. Trowbridge made in his analysis. So we would have provided all that information to the county at those hearings and that would have assisted the county in its analysis and hopefully caused it to reconsider what was its proposed analysis. We would have also pointed to a letter from the Manhattan Assessor's Office in Boyle County that also states that gas turbines are not taxed as real property and that was a letter that Boyle County actually sought out on its own, it's attached to the complaint and this is alleged, in its own analysis that it appears to have disregarded. The assessor failed to review the property herself, which is statutorily required under 9-155. There was no improvement whatsoever to the 001 parcel, which Mr. Trowbridge acknowledged in an email. He stated, you know, no notice will go out on 001 because there is no improvement there. Nothing has changed on that parcel, I think were his words. The increase alone suggests arbitrary and capricious evaluation, this, you know, $54 million increase, 60,000%. There needs to be something behind that and at the time the property was only 4.2% built. This rocketed the property to be the seventh highest pin in the county with only 4.2% development complete on it. Additionally, the county and the supervisor used a duplicate assessment evaluation for the neighboring gas plant and the 001 parcel, which had nothing on it. This was just a mistake, this was a clear error, but that was one further basis on which the, sorry, the Board of Revenue could have reassessed. Justice Danforth, any questions at this time? No, thank you. All right, Mr. Giufoli, you'll have an opportunity in rebuttal. Thank you. Thank you. So, Mr. Prowse, are you going to go first? Yes, Justice. All right. And I'll ask, I know that you're splitting it with Ms. Maluzzi for Jackson Township. I'll ask the two of you to please your own time and you may proceed. May it please the Court, Justices, Counsel, my name is Scott Piles. I'm an Assistant State's Attorney for Will County. I'm going to be addressing the failure to exhaust the administrative remedies aspect of the case along with the notice, and Ms. Maluzzi will be talking about the properties and also on the notice issue. From the get-go, the argument made by counsel seems to be saying that they did not receive any notice of the reassessment of this property. As the record is relatively clear and as extensive, there have been conversations going on with regard to Jackson Generation in the county, the Supervisor of Assessments, the State's Attorney's Office, the Treasurer's Office, and there's a lot of different governmental bodies that are involved in this process. Obviously, Jackson Generation was starting to build a power generating plant which had been previously vacant farmland here in Will County. It wasn't a secret that that was going on. The problem and the difficulty and the concern of the plaintiffs here is that at some point the property, the farmland that had been vacant and had been assessed as vacant farmland was going to start being assessed at what its true value was when they are putting millions of dollars of buildings and equipment onto this land. At some point, there's going to be a reassessment of this property. That took place in 2019. The claim here is that they did not receive notice of the reassessment. Under the property tax code, we are supposed to use the address that is on the property tax records. That's what was done here. The reassessment was sent to the address that is on the property tax bill. The statutory notice includes publication as well, correct? Correct. It was published, but it was still published that the publication took place prior to the reassessment. Correct. Is it the county's position that there's no obligation to republish when the value goes up so significantly? I mean, I think there's a distinction between a newspaper notice and a... Well, the statute requires both. Right. I'm focusing on the publication notice for a moment. Okay. Does the county concede that they were required to republish when there was a reassessment? It is not my understanding that we have to republish in a newspaper when there's a reassessment, that we actually send out a mail, the reassessment card to the property owner indicating there's been a reassessment on the property. And that was, in fact, sent to the address listed on the property tax card. So it's the county's position that you can go from $90,000 to $40 million and not have to republish this new assessment. Justice Hall, I don't think under the property tax code when there's been a reassessment that we have to publish a separate newspaper notice in addition to the mail notice that we do send to the property tax owner. Counsel, did the mail notice come back to you? My understanding isn't in the record, yes.  And what steps were taken after it was returned to you? I don't know if that's in the record, Justice, that important. I'm sure the county, which has got 750,000 people, I'm sure there's quite a few people that have a return to sender card that is sent back to the county. If you take the plaintiffs and the appellant's position here in this case, we're supposed to engage private investigators and information to find out, gee, well, where are these people moved? It's actually the obligation of the taxpayer to make sure that the correct address is on the property tax record so that they can receive the information they need regarding their tax bill. I think it's important to note that in addition to them receiving notices of reassessments, there's never been a tax sale on any of these properties. The plaintiffs were getting their property tax bills and they were getting the notices because the properties are never sold for taxes. So obviously at some point they were getting... The property tax bill was paid under protest. We know that. No, no, I understand that. But they are receiving the information regarding the taxes. But the question is the timing of the receipt in relation to the opportunity to appeal. Acknowledged.  of what the proper address. In their brief, they said, well, the Houston address was not being monitored. It doesn't say that it's not their address anymore. It doesn't say that they don't receive any mail there. They're saying it's not being monitored. Well, if you take the plaintiffs' position to an extreme, that anybody that's claiming that their address, that they're on vacation at their vacation home in Florida, that they're not monitoring their mail back in Illinois, that somehow that's going to give a defense to a property tax. I think that's not a road that we want to go down. Counsel, do you acknowledge that the office was in communication with the company during the years prior to the reassessment through their counsel, through emails and correspondence and the like? Correct. There were meetings. There were permits being filled. There were zoning issues. There were a lot of different things that were going on with different agencies within the county. I think it's going to be difficult to a certain extent. Jackson Generation, their claim is, oh, we're special. We're building this huge plant. We should be treated differently than everybody else. And I don't think that that's the position that we want to have. Essentially, in this particular case, they were sent notice of the reassessment to the address on their property tax bill. On one of the two. Correct. But the one that was not sent, that was still the vacant land. The one where they got the reassessment, that's where the construction and that's where the buildings were being done. Does the publication notice require, though, that if there's no change in assessment, you don't have to send a notice out? If there's not a reassessment, I don't think that there, why would we send out a notice? Not why would you, but is there a requirement under the Constitution that's different for purposes of notice between sending it out where there's no change for 001 and sending it out where there is change for 002? You don't have to do it for 01? I think that there's a distinction when there's not been a reassessment for that property to send out a notice. And I want to concede the rest of my time to my co-counsel. Thank you. May it please the court. Counsel, my name is Mallory Malusi and I am arguing on behalf of all the other defendants other than the county. To just address some of your questions, there is no statutory requirement to republish if the Board of Review does the reassessment. So this procedure laid out in the property tax code is that the assessor makes an initial determination, publishes that, and then it goes to the Board of Review to confirm the value of the assessed property. The Board of Review, if they make any change, for example, if a property owner seeks a reduction or something and then they make the change, that publication comes after the Board of Review makes their final determination. And their only obligation between the two publications is to send out the notice of any change or reassessment, either done by the assessor or by the Board of Review itself. So there is no obligation under the property tax code to do a second publication, even if the Board of Review, in this case, decided to make the change. And to that point, the assessor's role ended once they made their publication and their initial determination, which was no change in reassessment, which means they did not have to send out a physical notice other than the publication in a non-quadrennial year. And that's where the assessor's role essentially ends under the property tax code. So for that, and I'll get into that briefly, that's another reason why the assessor really should not be a defendant in this case. The property tax code is very clear that there's one proper defendant in these type of proceedings, the county collector. And even if you extrapolate the notice issues raised by the plaintiff, all of those were allegedly done by the county Board of Review, and the assessor did not have any more role, statutorily or realistically or practically, in actually making the decision challenged here. I also wanted to point out that as far as the notice goes, you know, the standards in Mercury that plaintiff noticed was the second factor is the procedures employed by the department, if they create a risk that would suffer erroneous deprivation. The procedures here is the sending of notices as in the county records on the tax bill. What is the chance of there being erroneous deprivation? Relatively small because it is the taxpayer who provides that information to the county to send out the notices. Again, there are hundreds of thousands of properties in the county of will. They're automatically sent out, and as Mr. Piles noted, they could receive hundreds of return to senders, and we would have to search every one. You know, plaintiff is like, well, this one, we were talking. The county talks throughout the whole process with multiple taxpayers throughout a tax year. Again, it's putting this high administrative burden on the government to do heightened procedural protections, which violates the third factor in Mercury as well. And so to that effect, what the plaintiff is asking and claiming is not a constitutional deprivation of their notice rights. In fact, Mercury, which dealt with not only the notice being sent, but then the taxpayer calling the county and getting incorrect information as to their obligations and deadlines to object to their taxes and amusement tax. The court explicitly says the due process does not require the government to explain available remedies or procedures to challenge administrative action as long as the remedies are provided in publicly available sources. And then it says if it chooses to give additional notice, that information must not be misleading or inaccurate. So Mercury is also inopposite because the court even recognized that the basic statutory notice is sufficient. And as long as you're following the information and following your general procedures, that is enough under the statute. And the plaintiff shouldn't be treated specially in this case, different than any other taxpayer, when they have the burden to provide us with the correct information. And then to the extent, as far as the other proper defendants, it was briefly mentioned about having this constructive trust over all these taxing bodies. I'm arguing there's about 15 named in this complaint, automatically binding these taxing bodies to participate and spend money on these proceedings that they have no interest in. And we cited the in-ring objection to 2005 levy case in our brief, but also people, XREL White versus TRONIC, which is 346LF3B1053, explicitly held that the court may not exercise its equitable powers when there is a clear statutory remedy. A constructive trust is an equitable remedy. There's a clear statutory remedy per section 23-15 of the property tax code that says if the plaintiff were to be successful, the money is refunded via the treasurer. So there is no opportunity here or no need to hold some kind of constructive trust over these taxing bodies. That's not how a property tax code works. There's a procedure set in place for a reason. Courts have recognized, and we have cited multiple of them, where similar attempts here to muddy the waters were rejected by the appellate court. This is nothing more than a tax objection case and trying to get around the ability or the necessary requirement to follow the tax objection procedures set forth in the property tax code. And I believe that is my time, so thank you very much. Any questions? No, sorry. That's okay. Thank you. Thank you very much. Mr. Jacobi-Rubato. Mr. Jacobi, please start with the statement Ms. Maluzzi made that under the property tax code, if the reassessment is made by the Board of Review, in that circumstance, there's no statutory obligation for republication or a new publication notice. So I direct you to section 12-30, and this is what provides for the reassessment procedures. And where there is a reassessment off cycle, then first, the chief county assessment officer shall send notice to each taxpayer whose assessment has been changed since the last proceeding assessment using the address as it appears on the assessor's records. And then secondly, the notice may but need not be sent by a township assessor. My question is publication. Yeah, yeah. So no, I agree that at that stage, there is no newspaper publication requirement in the statute. But notice is still required to be reasonably calculated to apprise the taxpayer of the proceedings. There was discussion of proper parties. There's been a lot of finger pointing in this case. It's been a big problem. So the statute requires that the supervisor of assessment send a notice, and then alternatively that the township assessor send a notice. Somebody has to send notice of the proposed reassessment. Somebody. Nobody did here. The 001 parcel notice didn't go out as we had established. I heard comment that because there was no development on it, there was no reassessment on it, so there was no notice required. That parcel was reassessed from $12,000 to $8.4 million. We got a tax bill for that. That's alleged. So notice had to have gone out for that reassessment. And it didn't. And that was conceded. So at the proposed reassessment stage, that's the notice that has to go out. And then it's at the final reassessment stage, which happens after the Board of Review hearing concludes if one is requested by the taxpayer once the taxpayer receives that notice. Then a final reassessment is issued. In this case, it was in January of 2021. And then the Board of Review is obligated to send notice at that point. And, again, those were the notices that went out in January but that were returned to sender. So that is the notice obligation. There were mentions in the brief and I think in the assessor's affidavit even saying the treasurer should have sent out. The county collector is the only proper defendant in this case. The treasurer should be the only defendant in this case. And they both cite to Article 20 of the Property Tax Code for treasurer obligations to send notice. I've scoured the article. There's no obligation for the treasurer to send out a notice in that article. It's 12-30 that controlled notice of the proposed reassessment here. Let's see. Did you make the statement previously that the assessor failed to inspect the property personally? Correct. And as alleged in the complaint as well. And that's one of the items that we would have raised had we had a hearing before the Board of Review. Thank you. You know, there's an argument that we're asked to be treated special. You know, the county says, well, every return of this notice sender that comes back, you know, we'd have to go and hire PIs and find out where all the addresses are. That's not the case. That's not what the Constitution requires. What's special about this case is that conversations were ongoing. Very specific conversations were ongoing in the years prior to 2020. Jackson Generation is a unique property out in Will County. It is a gigantic gas plant, one of two or three at the time. And it is a property that was being heavily developed. So this wasn't a homeowner that, you know, moved away and gave a bad address and then couldn't find them. They had to chase them down. This was a taxpayer that the county was well aware of, had contact information for, had been in contact with. And then, again, when Trover drained his consultation and obtained those Enterprise Zone Certificate applications, which, by the way, is very unusual. So that also sets Jackson – I mean, they were treating Jackson Generation as a different kind of property. So when those come back and those have all the addresses, what's relevant in this case is that the county supervisor and the assessor all had full access to all sorts of ways to get a hold of Jackson Generation when that mailing was returned and say, hey, by the way, we've reassessed your property $54 million higher than it used to be. If you have any objection to that or you want to present any evidence in relation to that, you know, you have 10 days to request a hearing. That would have been fair. That would have been constitutional. It didn't happen in this case. Their constitutional rights were violated, due process rights. Accordingly, the tax assessment is void. And Council 1 through 6 request our constitutional claims separate and apart from the alternative statutory tax objection that Council mentioned a moment ago. It's not just a tax objection case. It's a constitutional case. And all Jackson Generation had to do in order to ensure the ability to participate was to have the correct address with the assessor's office. Had that address been updated, then they would have received notice. But Jackson Generation's failure to update that address at the time that the proposed reassessment went out, which they didn't know was coming in the fall of 2020, doesn't deprive them of their due process rights. The standard is reasonably calculated. And when the county received a return to sender, they needed to send out some notice that was reasonably calculated to put Jackson Generation on notice. Jackson Generation, prior to that, had been looking at the newspaper. Had been looking at Farmers Weekly to get their assessment updates. So this mailing that went out was return to sender. I mean, that's the critical factor. It was return to sender. And the county knew it. The county knew Jackson Generation didn't have notice. So what next, if anything? And in this case, under these circumstances, they were required to do just a little bit more to provide Jackson Generation with the constitutional due process rights that the Constitution requires. Thank you. Any other questions? No, sir. All right. The court thanks all three parties for spirited arguments. We will take the matter under advisement and render a decision in due course.